MILLER, APPELLANT, *v.* CITY OF MARION, APPELLEE.
HARDIN, APPELLANT, *v.* CITY OF MARION, APPELLEE.

(Nos. 1015 and 1016—Decided May 10, 1950.)

*Messrs. Maloney & Kelley,* for appellant in cause No. 1015.

*Mr. Carter Patton* and *Mr. William P. Maloney,* for appellant in cause No. 1016.

*Mr. John W. Watters* and *Mr. Frank W. Weidemann,* for appellee.

*Per Curiam.* These are appeals on questions of law by the plaintiffs and the persons other than the plaintiffs, on whose behalf each of the actions is brought, and cross-appeals on questions of law by the defendant.

Case No. 1016 is an action by Hardin to recover from defendant city a balance which he claims is due him for services rendered by him in his employment by the city as a member of its police department during the years 1933, 1934, 1935, 1936, and 1937, and for a declaratory judgment, in favor of all other persons employed by the city as members of its police department during those years, as to the balances due them, respectively, for services rendered during such period of time.

The aggregate amount claimed to be due is $19,434.57 and interest.

Case No. 1015 is an action by Miller to recover from the defendant city a balance which he claims is due him for services rendered by him in his employment

by the city as a member of its fire department during the years 1933, 1934, 1935, 1936, and 1937, and for a declaratory judgment, in favor of all the other persons employed by the city as members of its fire department during those years, as to the balances due them, respectively, for services rendered during such period of time.

The aggregate amount claimed to be due is the sum of $38,706.91, with interest.

The action by Hardin was commenced August 6, 1945, and the action by Miller was commenced October 24, 1946.

The city questioned the rights of the named plaintiffs to institute class suits but later withdrew the objections, with the understanding that each of the several claimants would file in the cause in which his claim was made an authorization directing counsel for the plaintiff in such cause to proceed with the prosecution of the action on behalf of the persons signing the authorization. These authorizations were later filed in the respective actions.

The city pleaded as defenses to the claims that the persons on whose behalf the actions were brought had waived, in writing, their respective claims for compensation; that such claims are based upon a liability created by statute, and actions thereon are barred six years from the accrual of the causes thereof, under the provisions of Section 11222, General Code; and that the funds derived from the collection and liquidation of delinquent taxes, which plaintiffs assert are subject to the payment of their claims, were not subjected to the payment of such claims and were expended by the city for other purposes.

The bills of exceptions disclose the following facts:

Large portions of the taxes levied by the city for municipal purposes during the years 1933, 1934, 1935,

1936, and 1937, and prior thereto, became delinquent and could not be collected during those years, and by reason thereof the city, during that period of time, except for the year 1935, had insufficient funds to pay its operating expenses including the salaries of the members of the police and fire departments.

In view of this situation, typewritten waivers were signed and given by each of the plaintiffs for the years mentioned, in which waivers each consented to receive certain amounts less than the compensation each was entitled to under the ordinances of the city.

The amounts alleged to be due represent the differences between the amounts actually received by plaintiffs, as compensation for their services, and the amounts the ordinances prescribed they should be paid.

These waivers for members of both departments were identical in form, the signatures of the members of the police department being affixed to one set of waivers, and the signatures of the members of the fire department being affixed to the other.

The amounts of compensation waived vary to the same extent as the rates of pay fixed by the ordinances for the various persons signing the waivers vary.

The waivers were executed at the solicitation of and on a form suggested by the finance committee of the council of the city and were executed pursuant to negotiations between the finance committee and the grievance committees of the members of the police and fire departments upon the oral understanding that when sufficient funds were derived by the city from the collection of delinquent taxes the members of each of the departments would be paid the waived portions of their salaries.

The waivers, omitting signatures, were, for the years 1933, 1934, 1936, and 1937, in the following forms:

"Year 1933

"To the Council and Auditor of the City of Marion, Ohio:

"We, the undersigned, employees of the city of Marion, Ohio, desiring to assist in reducing operating costs of said city during the year 1933, hereby voluntarily consent and agree that for our services rendered to said city, beginning January 1, 1933, and ending December 31, 1933, in the respective positions held by us as hereinafter designated, we will accept as full compensation from the said city of Marion for our services such sum per month as we hereinafter respectively designate.

"This proposal and agreement shall be authority of the city council to appropriate funds for payment of our respective salaries in accordance with the amounts herein specified; and we further authorize the auditor of the city of Marion to issue checks to us in payment for our services in the amounts per month hereinafter designated which we hereby agree to accept as full compensation for our respective services as such employees of the city of Marion."

"First Half Year 1934

"To the Council and Auditor of the City of Marion, Ohio:

"We, the undersigned, employees of the city of Marion, Ohio, desiring to assist in reducing operating cost of said city during the first half of 1934, hereby voluntarily consent and agree that for our services rendered to said city, beginning January 1st, 1934, and ending June 30, 1934, we will take a twenty per cent (20%) reduction in our regular salaries in the respective positions held by us as hereinafter designated, and that we will accept as full compensation from the said city of Marion for our services, such sum per month as we hereinafter respectively designate.

"This proposal and agreement shall be authority of the city council to appropriate funds for payment of our respective salaries in accordance with the amounts herein specified; and we further authorize the auditor of the city of Marion to issue checks to us in payment for our services in the amounts per month hereinafter designated which we hereby agree to accept as full compensation for our respective services as such employees of the city of Marion, Ohio.

"It is further understood and agreed, that in the event the finances of the city of Marion, become such as to enable the payment of over eighty per cent (80%) of our regular salaries, then in such event, it is hereby agreed, that such payment of a higher per cent shall be paid.

"It is further agreed, that if the finances of the city of Marion become such, as to permit the payment of back salaries, which have been deducted by reason of the signing of this waiver, then, in such event, such per cent of back salaries will be paid as the finances of the city of Marion shall warrant."

"Last Half Year 1934

"To the Council and Auditor of the City of Marion, Ohio:

"We, the undersigned, employees of the city of Marion, Ohio, desiring to assist in reducing operating cost of said city, during the last half of 1934, hereby voluntarily donate a sum equal to twenty (20%) per cent of our regular salaries for our services rendered or to be rendered to said city, beginning July 1, 1934 and ending December 31, 1934.

"This proposal and agreement shall be authority of the city council to appropriate funds and the city auditor to issue checks to us in payment of our respective salaries in accordance with the provisions of the above paragraph.

"It is further understood and agreed, that in the event the finances of the city of Marion become such that a donation of twenty (20%) per cent of our regular salaries or any part thereof is unnecessary, notification shall be given to us and accordingly, the donations which we hereby agree to make, will terminate.

"It is further agreed, that if the finances of the city of Marion become such as to permit the payment of all or any part of the total amount donated by us during the course of the last half of the year 1934, then in such event action will be taken by the council to restore to us the whole or any part of the amount so donated by us to the city of Marion for services rendered.

"Nothing contained in this agreement is to be construed as a reduction in regular salaries, but merely as a donation to the city of Marion, and as a gesture on our part to assist in reducing operating cost of said city during the last half of the year 1934."

"Years 1936 and 1937

"To the Council and Auditor of the City of Marion, Ohio:

"We, the undersigned employees of the city of Marion, Ohio, desiring to assist in reducing operating costs of said city during the years of 1936 and 1937 hereby voluntarily consent and agree that for our services rendered to said city beginning January 1, 1936, and ending December 1, 1937, in the respective positions held by us as hereinafter designated, we will accept for our services 15% less than our salaries provided by ordinance of the city of Marion, Ohio.

"This proposal and agreement hereby authorizes the city council to appropriate funds and payment for salary in amounts of 15% less than the salaries set up by ordinance of the city of Marion, Ohio; and we further authorize the auditor to issue checks in said

amounts which we agree to accept as full compensation for our respective services as employees of the city of Marion, Ohio.''

The city council, following the execution of such waivers, adopted appropriation ordinances during certain of such years for payment to members of the police and fire departments of lesser amounts than those required by the ordinances, such lesser amounts being sufficient only to pay the compensation due after giving effect to the deductions in pay authorized by the waivers. The city paid, and the police and firemen accepted, such reduced pay.

The city council did not adopt any resolution or ordinance prescribing that the amounts of compensation waived by the members of the police and fire departments during such years should be paid to them out of the proceeds of delinquent taxes, nor did council authorize its finance committee to negotiate with the grievance committees of the police and fire departments or to enter into any agreement with them as to the subject matter of the waivers.

On November 12, 1935, council adopted an ordinance which was duly amended by ordinance adopted December 16, 1935, providing for the issuing of bonds of the city of Marion, in the sum of $125,500, for the purpose of liquidating its indebtedness. This ordinance provided that the bonds were to be issued in anticipation of the collection of delinquent taxes, and that the delinquent taxes collected for and to the credit of the city should be paid to the authority having charge of the sinking fund and placed in a separate fund for the purpose of paying interest on and retiring such bonds.

On December 9, 1937, council passed an ordinance providing for the issuance of bonds in the sum of

$70,000 in anticipation of the collection of delinquent taxes. It was provided in these bonds that all funds derived from the collection of delinquent taxes should be placed in a separate and distinct fund which was irrevocably pledged for the payment of interest and principal of the bonds.

In this ordinance it was recited that the total amount of delinquent taxes due and unpaid to the city at the last semiannual tax settlement was $250,535.39.

On October 28, 1940, council adopted an ordinance providing for the issuance of notes in anticipation of the issuance of bonds for poor relief, in the sum of $40,000, in which it was prescribed that all the revenues derived from the payment of delinquent taxes are irrevocably pledged to the payment of the bonds and the notes issued in anticipation thereof.

On August 10, 1942, council adopted an ordinance for the issuance of bonds in the sum of $12,000 to be used for poor relief.

In this ordinance it was provided that while such notes are outstanding all the revenues derived from the payment of delinquent taxes are irrevocably pledged to the payment of such bonds and the notes issued in anticipation thereof.

All the tax delinquences existing during the years 1934 to 1937, inclusive, were required by statute to be fully liquidated and collected prior to the time these actions were tried in the Common Pleas Court, and it is, therefore, presumed that this had occurred.

By ordinance the city, during the years 1933 to 1945, inclusive, appropriated funds for the payment of members of its police department, which funds were in excess of the amounts paid to such members as compensation for their services during those years, in the following amounts:

| Year | Excess Appropriation |
|------|----------------------|
| 1933 | $4579.24 |
| 1934 | none |
| 1935 | none |
| 1936 | 2.22 |
| 1937 | 1497.19 |
| 1938 | 554.51 |
| 1939 | 2692.88 |
| 1940 | none |
| 1941 | 647.51 |
| 1942 | 49.56 |
| 1943 | 1453.49 |
| 1944 | 5405.22 |
| 1945 | 5899.77 |

By this ordinance the city also appropriated funds for the payment of members of its fire department, which funds were in excess of the amounts paid to such members as compensation for their services during those years, in the following amounts:

| Year | Excess Appropriation |
|------|----------------------|
| 1933 | $10696.00 |
| 1934 | .41 |
| 1935 | 1942.74 |
| 1936 | 207.42 |
| 1937 | 888.43 |
| 1938 | 326.56 |
| 1939 | 2513.42 |
| 1940 | none |
| 1941 | 1206.39 |
| 1942 | 50.98 |
| 1943 | 541.88 |
| 1944 | 5431.85 |
| 1945 | 5427.00 |

In both cases, the Common Pleas Court, in effect, found and adjudged as follows:

That, notwithstanding the waivers signed by the members of the police and fire departments, such members were entitled to payment by the city of the differences between the amounts received by them and the amounts which the ordinances then in effect provided should be paid them during the years 1933 to 1937, inclusive; that the liability created by the ordinances fixing the compensation of the members of these departments was a liability created by law, and action thereon was, therefore, barred by the provisions of Section 11222, General Code, upon the expiration of six years from the time the cause of action for such compensation accrued; that the appropriations for the payment of the members of the police department during the years 1933 to 1937, inclusive, exceeded the amounts paid to the members of such department by the sum of $6,079.05; that the appropriations for the payment of the members of the fire department during the years 1933 to 1937, inclusive, exceeded the amounts paid to the members of such department by the sum of $11,792.25; that such excess appropriations constituted trust funds held by the city for the payment of the members of the police and fire departments in the shares to which such members are entitled, based on the differences between the amounts they would have received under the salary ordinances and the amounts actually received by them during such years, and in the proportion that the aggregate of the trust fund for each department bears to the aggregate amount of differences in each department; that the trust constituted a continuing and subsisting trust; that payments from the trust funds are not barred by any statute of limitation, and the aggre-

gate amounts thereof should be paid by the city to the members of the police and fire departments in the shares and in the proportion above prescribed; and that no interest should be paid on the amounts found due the members of the fire department.

Those are the judgments from which the plaintiffs appeal, and from which the defendant cross-appeals.

As the appeals involve the same questions of law and similar questions of fact, the court considers them together.

Plaintiffs contend that the members of the respective departments are entitled to the differences between the amounts received by them during the years 1933 to 1937, inclusive, and the amounts they should have received under the ordinances regulating their employment, and the amounts found due them should bear interest at six per cent; that the city is bound, as upon contract, by the representations of the committees of its council in procuring the written waivers, and, if not bound as by contract, the city, having received and accepted the services of the members of the departments during such years, on the basis of such waivers is estopped from denying that it is bound; that, although portions of the taxes levied for the maintenance of the respective departments became and were delinquent during such years, the levies themselves created a special fund which has since been collected in full and is for the benefit of the members of the respective departments to the extent of the amounts due each of them, such fund constitutes a trust fund out of which they are entitled to the payment of their respective claims, and, consequently, action upon such claims is not barred by the provisions of Section 11222, General Code; and that the Common Pleas Court erred in overruling motions of plaintiffs to amend their petitions to conform to the evidence.

On the other hand, the city contends that the claims of the members of both departments are barred by the provisions of Section 11222, General Code; that the mere levy of taxes for expenses of the police and fire departments, without appropriation for the respective departments, did not create a trust fund for the payment of the members of such departments; that the waivers preclude the members of the departments from making any claim for compensation for the years involved; and that the excess appropriations reverted to the general fund of the city at the expiration of the year in which they were made, subject to reappropriation, and, consequently, do not constitute a special fund from which the members of such departments may be paid.

We will first consider the legal effect of the various written waivers.

The waivers for the years 1933, 1935, and 1936 purport to have been executed "to assist in reducing operating cost of said city" during those years and are absolute and unconditional.

The contention of the plaintiffs that these waivers were executed with the oral understanding that the city would reimburse the signers for the amounts of the reductions in pay at some future time or out of funds derived from the collection of delinquent taxes is wholly inconsistent with the absolute and unconditional character of the waivers.

As the waivers are in writing, all agreements leading to their execution are conclusively presumed to have been merged in the written instruments, and since they are free from ambiguity their terms are not subject to alteration by oral evidence. Therefore, these waivers must be construed as having the effect they purport to have, that is, of absolute and unconditional waivers.

The members of both the police and fire departments during the year 1935 received the full pay prescribed by ordinance and there is nothing due or owing to any of them for services rendered by them during that year. Hence, it is unnecessary to consider the legal effect of the waivers for that year.

The first two paragraphs of the waivers for the first half of the year 1934, signed by members of both the police department and the fire department, the only waivers not hereinbefore discussed, are in the same general form as the first two paragraphs of the waivers for the year 1933, but there are two additional paragraphs setting forth certain conditions attending their execution, the pertinent one being contained in the last paragraph, which reads as follows:

"It is further agreed, that if the finances of the city of Marion become such, as to permit the payment of back salaries, which have been deducted by reason of the signing of this waiver, then, in such event, such per cent of back salaries will be paid as the finances of the city of Marion shall warrant."

In the waivers signed by the members of both the police and fire departments for the last half of the year 1934, there are three additional paragraphs setting forth certain conditions. The pertinent condition is set forth in the last paragraph, which reads as follows:

"It is further agreed, that if the finances of the city of Marion become such as to permit the payment of all or any part of the total amount donated by us during the course of the last half of the year 1934, then in such event action will be taken by the council to restore to us the whole or any part of the amount so donated by us to the city of Marion for services rendered."

The conditions mentioned are inconsistent with the recitals in the first paragraph of the various waivers to the effect that the signers, desiring to assist in reducing the operating expenses of the city, consent and agree to reduction in pay. A reduction in operating expenses would not be accomplished by merely extending the time of payment of a portion of such expenses. However, considering the waivers by the four corners, it is apparent that it was the intention of the signers that, notwithstanding such recital, the waivers were made and given upon the express conditions mentioned.

The waivers for the year 1934, therefore, did not have the effect of releasing or discharging the city from the payment of the differences between the amounts of compensation provided by the ordinances and the amounts actually paid to the members of each of such departments, but operated solely as a proposal to extend the time of payment of such differences.

The aggregate of such differences for the members of the police department for the year 1934 is $4,501.15 and for the members of the fire department for the same year is $10,792.98.

Unless the conditions of the waivers above set forth are binding upon both the plaintiffs and the city, or unless the city by the levy of taxes or by its appropriation ordinances created a special trust fund for the payment of such differences, actions therefor were barred by the provisions of Section 11222, General Code, long prior to the commencement of the instant actions, as the liability of the city is created by statute, and the right of action of each claimant for the unpaid portion of his compensation prescribed by ordinance accrued each month as his salary became due and such portion was not paid. And this is true irrespective of whether funds had been or were appropriated for such

payment, as there are statutory provisions requiring the appropriation of funds by cities for the payment of judgments.

The mere levy of taxes for municipal purposes, including maintenance of the police and fire departments, did not of itself constitute the creation of a special fund for the payment of the unpaid portions of the compensation of members of the police and fire departments. It is only when such taxes are collected and by ordinance appropriated that a special fund is created. Furthermore, the statutes of Ohio expressly authorize cities to use the proceeds of delinquent taxes for purposes other than those specified in the original levies, as was done by the city of Marion, thus making inconsistent the contention that the original levy constituted the creation of a special fund.

As hereinbefore stated, the evidence in these cases does not tend to prove that the city agreed with any of the plaintiffs to use the proceeds of delinquent taxes for the purpose of paying the unpaid portions of the salaries.

Following the execution of the waivers, the city had the option of reducing the pay or the personnel of each of the departments, so as to bring the cost of maintenance thereof within the limits of funds it could then appropriate for such purpose, or to accept the waivers in the form they were given by appropriating funds in conformity therewith.

In this situation the city acted by ordinances appropriating sufficient funds to pay only that portion of the compensation the time of payment of which had not been extended by the waivers, which ordinances were necessarily responsive to the waivers. This action on the part of the city constituted an acceptance of the proposals contained in the waivers, and the city thereby became liable to pay the salaries in con-

formity with the conditions set forth in the waivers.

It will be noted that none of the quoted conditions of the waivers provides for the payment of interest upon the unpaid portions of the compensation of the members of the police and fire departments.

Although the quoted conditions are worded somewhat differently, it is the clear intent of each of them that the unpaid balances should become due and payable only if and when the finances of the city should permit or warrant their payment.

On the record, we determine, as a matter of law, in the action brought by Hardin on behalf of himself and other members of the police department, that the city owes Hardin and the other members, as balances of their compensation for the year 1934, the aggregate sum of $4,501.15; and, in the action brought by Miller on behalf of himself and other members of the fire department, that the city owes Miller and the other members, as balances of their compensation for the year 1934, the aggregate sum of $10,792.98.

We determine further, as a matter of law, that such amounts became due to the respective persons within six years prior to October 24, 1946; that actions thereon were not barred by any statute of limitation; and that it is impossible from the record to fix the approximate date when the finances of the city permitted or warranted the payment of the amounts owing by the city and the date when such amounts, under the conditions set forth in the waivers, became due and payable.

We determine further, as a matter of law, that the appropriations made by the city subsequent to the year 1934 and prior to the time the finances of the city were such as to permit or warrant the payments of the amounts owing for compensation for the year 1934 were encumbered by such indebtedness incurred

during the year 1934, and the amounts of such appropriations each year in excess of the amounts paid policemen and firemen did not revert to the general fund of the city for reappropriation, but constituted special funds for the payment of such indebtedness incurred during the year 1934, although, in view of our holding that the indebtedness mentioned constituted a general obligation of the city, this determination is not essential to the decisions of these cases.

We determine further that as the indebtedness mentioned is not contractual in character but is a liability created by statute, neither Section 8305 nor any other section of the General Code authorizes the award of interest thereon to the creditors from the time such indebtedness became due.

We determine further that there is no evidence tending to sustain the allegations of the amendments to the petitions which plaintiffs moved the court to allow in order to have conformance with the evidence, and, consequently, that the court did not err in overruling the motions to allow such amendments.

We determine and adjudge further that the judgments of the Common Pleas Court are contrary to law in each and every respect. They do not conform to the foregoing holdings of this court. Accordingly, the judgments hereby are modified so as to conform to our holdings and, as modified, are affirmed.

*Judgments accordingly.*

GUERNSEY, P. J., MIDDLETON and JACKSON, JJ., concur.